IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAWN STACY, | ) |
| | ) |
| Plaintiff, | ) No. _____ |
| | ) Judge: _____ |
| v. | ) Magistrate Judge: _____ |
| | ) **JURY DEMAND** |
| MVT SERVICES, LLC, and BRIAN | ) |
| STOTT, individually, | ) |
| | ) |
| Defendant. | |

## COMPLAINT

The Plaintiff, DAWN STACY ("Plaintiff"), sues the Defendants, MVT SERVICES, LLC, MESILLA VALLEY TRANSPORTATION NASHVILLE OFFICE OF MVT SERVICES, LLC, and BRIAN STOTT (collectively the "Defendants"), for damages, and states as follows:

### Parties and Venue

1. Plaintiff is a female individual resident of Davidson County, Tennessee, which is within the Middle District of Tennessee, and was formerly employed by MVT SERVICES, LLC as a Fleet Manager.

2. At all relevant times Defendant MVT SERVICES, LLC (hereinafter, "MVT"), has been a foreign corporation doing business in the State of Tennessee and in the City of Nashville.

3. MVT is engaged in an industry affecting commerce and during all times material to the cause of the action has continuously employed more than fifteen (15) employees.

4. Upon information and belief, MVT currently employs approximately 3,000 employees.

5. A substantial portion of MVT's business is carried out at 3750 Stewarts Lane, Nashville, Davidson County, TN 37218 (hereinafter, "Nashville Office"), which is within the Middle District of Tennessee.

6. MVT is registered with the Secretary of the State of Tennessee and is authorized to do business in this State.

7. MVT's designated registered agent for service of process in Tennessee is National Corporate Research, Ltd., Inc., 992 Davidson Dr., Suite B, Nashville, Tennessee 37205.

8. Defendant BRIAN STOTT (hereinafter, "Defendant Stott"), is a male individual who is and was at all times relevant, employed by Defendant MVT.

9. Upon information and belief, Defendant Stott is currently working at Defendant MVT's New Mexico office, located at 3590 W. Picacho Avenue, Las Cruces, New Mexico 88007.

10. All of the events giving rise to the claims asserted herein occurred within Davidson County, Tennessee, which is within the Middle District of Tennessee.

## Jurisdictional Statement

11. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* and the Tennessee Human Rights Act, §4-21-101, *et seq*.

12. Counts I and II, below, are civil actions for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Accordingly, Counts I and

2

II of this action present a federal question over which this court has jurisdiction pursuant to 28 U.S.C. § 1331. Counts I and II are also civil actions arising under an Act of Congress regulating commerce, over which this court has jurisdiction pursuant to 28 U.S.C. § 1337.

13. Counts III through VIII, below, are claims for damages brought under the laws of the State of Tennessee that are so related to the federal-question claim in this action over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Accordingly, Counts II through VIII of this action fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

## Exhaustion of Remedies

14. Prior to instituting this action, Plaintiff timely filed a charge of sexual harassment with the Equal Employment Opportunity Commission pursuant to §706(e) of Title VII, 42 U.S.C. §2000(e-5)(e) and received a right to sue letter within 90 days of filing this lawsuit.

## Statement of the Claim

### COUNT I: TITLE VII CLAIM AGAINST MVT AND STOTT FOR SEXUAL HARASSMENT

15. This count is an action for damages against MVT under Title VII of the Civil Rights Act of 1964, as amended (hereinafter referred to as "Title VII"), 42 U.S.C. § 2000e, *et seq.*, for the sexual harassment of Plaintiff, its employee, by Brian Stott, her supervisor, during the course of his duties.

3

16. At all relevant times, MVT engaged in an industry affecting trade, traffic, commerce, transportation, transmission, or communication among the several States (namely, the direction and orchestration of transportation by freight truck).

17. At all relevant times, MVT had fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the then current calendar year.

18. Plaintiff was employed by MVT beginning on or about December 8, 2010, to work out of the Nashville Office as a Fleet Manager.

19. Defendant Stott was an employee and agent of MVT who worked at the Nashville Office as a supervisor.

20. Defendant Stott was Plaintiff's direct supervisor from the time of her hire through the time of her constructive discharge.

21. Starting on or about December 2010, Defendant Stott engaged in a pattern and practice of sexual harassment against Plaintiff, consisting primarily of verbally threatening and abusive comments, insults, physical abuse, intimidation, sexual slurs, derogatory names, and unwelcome suggestive comments.

22. The sexual harassment included an incident occurring in January of 2011, in which Defendant Stott asked Plaintiff questions about her sexual orientation and requested to watch her perform same-sex sexual acts.

23. The sexual harassment also included Defendant Stott making regular comments to Plaintiff about her "good looks," and continually suggesting to her that she use her feminine abilities to manipulate drivers.

4

24. The sexual harassment also included an incident occurring on February 7, 2011, in which Defendant Stott screamed at Plaintiff in an extremely threatening manner in front of her co-workers. Defendant Stott also regularly screamed derogatory names at Plaintiff, such as "dip-shit" and "stupid."

25. The sexual harassment also included an incident occurring on or about February 21, 2011, in which Defendant Stott made vulgar and lewd comments to Plaintiff while reprimanding her for being on the phone with a driver for too long. The reprimand ended with Defendant Stott pounding his fists on Plaintiff's desk and screaming at her, in front of several other employees, to "quit sucking [the driver's] dick and get off the fucking phone with him right now."

26. The sexual harassment occurred in other forms and on other occasions, forming a severe and pervasive pattern of vulgar, profane, drunken, and threatening verbal abuse of a sexual nature.

27. This pattern of sexual harassment was unwelcome and unsolicited by Plaintiff. Plaintiff repeatedly objected and protested to Defendant Stott, other employees and MVT supervisory staff as to these unwelcome and unsolicited harassing comments and actions. The continued sexual harassment created an intimidating, hostile, uncomfortable, and offensive working environment for Plaintiff, and had the effect of unreasonably interfering with her work performance and private life. Specifically, it caused her to suffer, among other things, stress, migraines, sleep loss, depression, anxiety, daily chest pains, irritability, marital problems, and twenty (20) pounds of weight loss.

5

28. On or about the first week of January 2011, Plaintiff reported Defendant Stott's sexual harassment to Joy Page (hereinafter, "Page"), MVT's Human Resources Director at the Nashville Office. Page instructed Plaintiff to report the harassment to Jimmy Landers (hereinafter, "Landers"), MVT's Operations Director at its office in El Paso, Texas.

29. Plaintiff reported the sexual harassment to Landers, as instructed, on three separate occasions in January of 2011.

30. However, the sexual harassment continued. On or about January 16, 2011, Defendant Stott approached Plaintiff's work station, where he proceeded to direct several unsolicited and unwelcome comments and questions to Plaintiff. Some of these comments and questions concerned Plaintiff's softball team. Specifically, Defendant Stott stated that Plaintiff's teammates looked like "dudes" and "chicks with dicks." He then he asked Plaintiff if she "batted for the other team", and if he could "watch." Defendant Stott also told Plaintiff that he "bet that [Plaintiff's softball teammates] must love looking at [Plaintiff's breasts]." Although Defendant Stott made these statements at the workplace during normal business hours, he appeared to be intoxicated.

31. Plaintiff continued reporting the sexual harassment to Landers, as instructed.

32. Kevin Bradley (hereinafter, "Bradley"), MVT's Operations Director for the Nashville Office, was advised of Plaintiff's complaint of sexual harassment in February of 2011.

33. Sometime later that month, Plaintiff was called into a meeting with Landers, Bradley, and Defendant Stott to discuss the matter. At that meeting, Plaintiff was advised that if she did not like Defendant Stott's behavior, she could quit.

34. Later that same month, Plaintiff had a meeting with Bradley to further discuss Plaintiff's complaint of sexual harassment. Bradley conferenced in Landers and Royal "Bumper" Jones (hereinafter, "Jones"), the Vice President of Operations and owner of MVT, by telephone. During that meeting, Bradley, Landers, and Jones did not offer Plaintiff any solution to the harassment. Instead, they jokingly suggested that Plaintiff could resolve the harassment herself by physically rebuffing Defendant Stott.

35. Because of the lack of confidentiality and seriousness with which the supervisors of MVT took her complaints, Plaintiff felt embarrassed, exposed, and helpless. As a result, Plaintiff's depression and anxiety increased.

36. In April of 2011, on four separate occasions, Plaintiff renewed her complaints about the sexual harassment by Defendant Stott to Bradley.

37. However, neither Bradley, nor anyone else at MVT, took any action to stop the harassment.

38. The harassment continued until, on April 26, 2011, unable to tolerate the harassment any longer, Plaintiff resigned her position at MVT. The working conditions were so difficult and unpleasant that a reasonable person under the same conditions would have felt compelled to leave or resign. Thus, her resignation constitutes a constructive discharge actionable under Title VII.

39. Upon information and belief, prior to receiving Plaintiff's complaints, MVT had received similar complaints from other female MVT employee's about sexually harassing behavior by Defendant Stott.

40. Because of the previous allegations made by other employees about sexual harassment by Defendant Stott, MVT knew or should have known of his propensity to engage in such behavior.

41. Furthermore, upon information and belief, Defendant Stott had previously been reprimanded by MVT for these prior incidents of sexual harassment.

42. However, either maliciously or with a reckless indifference to the rights of Plaintiff to be free from a sexually hostile work environment, MVT failed to follow its own policies to ensure safe and harassment-free work environment.

43. Additionally, when MVT was advised by Plaintiff that she was being sexually harassed by Defendant Stott, MVT did nothing to stop the harassment.

44. As a direct, proximate result of the sexual harassment complained of above, Plaintiff has suffered damages, including a loss of earning capacity and extreme emotional distress and mental anguish.

45. The Defendants are directly or vicariously liable for the sexual harassment of Plaintiff by Defendant Stott.

46. On June 15, 2011, Plaintiff filed a formal charge of unlawful employment practices with the Equal Employment Opportunity Commission (EEOC), and ultimately received from the EEOC a Notice of Right to Sue, dated December 18, 2011.

## COUNT II: TITLE VII CLAIM AGAINST
## MVT AND STOTT FOR RETALIATION

47. This count is an action for damages against MVT under Title VII, 42 U.S.C. § 2000e-3(a), for retaliation against Plaintiff, its employees, by Defendant Stott, her direct supervisor, and Landers, Bradley, and Jones, her other supervisors, during the course of their employment.

48. Plaintiff incorporates herein the previous paragraphs of this Complaint.

49. Plaintiff engaged in a protected activity by complaining to her supervisors about unlawful sexual harassment.

50. Plaintiff suffered discriminatory adverse employment actions following the making of these complaints.

51. Specifically, shortly following the second meeting that took place in February of 2011, Jones visited the Nashville Office to "clean it up." During his visit, he changed Plaintiff's schedule.

52. Plaintiff's schedule was adjusted in such a manner that she was forced to work approximately six to seven extra weekend shifts per month without any additional compensation. This schedule change also forced Plaintiff to be in the Nashville Office alone with Defendant Stott, her harasser, on the weekends. Defendant Stott would sometimes arrive at the Nashville Office on the weekends when Plaintiff was working, wearing nothing but his pajamas.

53. Plaintiff also suffered the adverse employment action of having drivers removed from other co-workers' boards and placed on hers. Not only did this create additional work for Plaintiff, but it brought her performance rating down. Specifically, the drivers who were transferred to her board were those known to be poorer performers.

9

This negatively affected Plaintiff's internal ratings with the company performance log, which, in turn, negatively affected Plaintiff's opportunity for merit pay increases and promotions.

54. Additionally, on April 20, 2011, Plaintiff was denied a raise which she had previously been promised, and which she deserved.

55. These adverse employment actions were causally connected to Plaintiff's protected activity. The adverse actions occurred shortly after plaintiff engaged in the protected activity, and they were carried out by the very supervisors to whom and about whom Plaintiff had complained.

56. The Defendants' treatment of Plaintiff following her complaints of sexual harassment was part of a knowing and intentional pattern of retaliation in violation of Title VII, U.S.C. § 2000e-3(a).

57. As a direct and proximate result of the retaliation by the Defendants against Plaintiff, Plaintiff has suffered harm, to include, among other things, emotional distress, humiliation, indignity, depression and anxiety.

### COUNT III: SUPPLEMENTAL STATE CLAIM AGAINST MVT AND STOTT FOR SEXUAL HARASSMENT IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT

58. This count is an action for damages against MVT under the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-101, *et seq.*, for the sexual harassment of Plaintiff, its employee, during the course of her duties by Stott, her supervisor.

59. Plaintiff incorporates herein the previous paragraphs of this Complaint.

60. Plaintiff was subjected to a pattern of unwanted sexual harassment and assault by Defendant Stott at MVT's Nashville office which created a hostile work environment.

61. Defendant MVT is liable for Defendant Stott's acts of sexual harassment because it was aware of the sexual harassment and permitted and condoned a pervasive harassing atmosphere.

62. Defendant Stott sexually harassed Plaintiff in violation of Tenn. Code Ann. § 42-21-401.

63. Defendant MVT is liable pursuant to Tenn. Code Ann. 42-21-101 *et seq.*, for the acts of its supervisory agents in sexually harassing Plaintiff, and in failing to take any action to protect Plaintiff.

64. As a direct and proximate result of these unlawful actions by the Defendants (namely, subjecting Plaintiff to sexual harassment), Plaintiff has suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

### COUNT IV: SUPPLEMENTAL STATE CLAIM AGAINST MVT FOR RETALIATORY DISCHARGE

65. Plaintiff incorporates herein the previous paragraphs of this Complaint.

66. It is the public policy and law of the State of Tennessee that employees must be able to exercise their rights under state and federal law without fear of reprisal or penalty from an employer.

67. Contrary to public policy and the common law of the State of Tennessee, as well as in violation of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, Defendant MVT constructively discharged Plaintiff in retaliation for refusing to

11

Case 3:11-cv-01241   Document 1   Filed 12/30/11   Page 11 of 15 PageID #: 11

participate in or remain silent about "illegal activities", as that term is defined in Tenn. Code Ann. § 50-1-304(a)(3).

68. The wrongful, retaliatory discharge of Plaintiff was intended to and had the effect of stifling Plaintiff, and possibly other employees, from exercising protected rights.

69. As a direct and proximate result of Defendant MVT's retaliatory discharge, Plaintiff has suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

70. Pursuant to Tenn. Code Ann. § 50-1-304(d), Plaintiff is entitled to recover damages for Defendant MVT's violation of Tenn. Code Ann. § 50-1-304(b), including reasonable attorneys' fees and costs.

## COUNT V: SUPPLEMENTAL STATE CLAIM AGAINST MVT AND STOTT FOR ASSAULT AND BATTERY

71. This count is an action for damages against Defendant Stott for assault and battery by Defendant Stott against Plaintiff, and against MVT under the doctrine of *respondeat superior*.

72. Plaintiff incorporates herein the previous paragraphs of this Complaint.

73. In an episode that occurred during that last week of December, 2011, Defendant Stott verbally and physically assaulted Plaintiff. Specifically, Defendant Stott angrily yelled at Plaintiff and then slapped her hand as a reprimand for a work-related error.

74. The touching was intentional, unwanted, unsolicited, and offensive to Plaintiff.

75. As a direct, proximate result of the assault and battery committed by Defendant Stott, Plaintiff has suffered emotional distress and mental anguish.

76. The actions of Defendant Stott were committed during the course of and within the scope of his employment. Accordingly, MVT is liable for Defendant Stott's actions under the doctrine of *respondeat superior*.

### COUNT VI: SUPPLEMENTAL STATE CLAIM AGAINST MVT AND STOTT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. This count is an action for damages against Defendant Stott for intentional infliction of emotional distress upon Plaintiff, and against MVT under the doctrine of *respondeat superior*.

78. Plaintiff incorporates herein the previous paragraphs of this Complaint.

79. The actions of Defendant Stott, as described herein, were intentional and were so outrageous that persons in civilized society should not be expected to tolerate them.

80. As a direct, proximate result of the outrageous behavior of Defendant Stott, Plaintiff suffered severe mental and emotional injury.

81. Defendant Stott's actions were committed during the course of and within the scope of his employment. Accordingly, MVT is liable for Defendant Stott's actions under the doctrine of *respondeat superior*.

### COUNT VII: SUPPLEMENTAL STATE CLAIM AGAINST MVT FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

82. Plaintiff incorporates herein the previous paragraphs of this Complaint.

83. Defendants' treatment of Plaintiff as aforesaid, constitutes negligent infliction of emotional distress.

84. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe emotional and/or mental distress, thereby entitling Plaintiff to relief related thereto as aforesaid.

<u>COUNT VIII: SUPPLEMENTAL STATE CLAIM AGAINST<br>MVT FOR NEGLIGENT SUPERVISION AND RETENTION</u>

85. Plaintiff incorporates herein the previous paragraphs of this Complaint.

86. Defendant MVT knew or reasonably should have known that Defendant Stott was engaging in unlawful conduct with Plaintiff and other employees in the workplace. Defendant MVT was negligent in allowing Defendant Stott to have unsupervised contact with Plaintiff and other female employees and in continuing to employ Defendant Stott.

87. Defendant MVT is liable to Plaintiff for the negligent supervision and retention of Defendant Stott.

88. As a direct and proximate result of Defendant MVT's negligence, Plaintiff has suffered financially and emotionally, as aforesaid.

**WHEREFORE, PLAINTIFF PRAYS:**

1. That a judgment be entered for the Plaintiff and against the Defendants, jointly and severally, for damages, both compensatory and punitive, in an amount to be determined at trial, plus reasonable attorneys' fees;
2. That Defendant MVT be subjected to such remedial measures as this Court deems appropriate in order to ensure compliance with applicable anti-discrimination laws;
3. That this matter be tried before a jury;
4. That all costs be taxed to Defendants; and
5. For such other, further and general relief as this Court may deem necessary and proper.

Respectfully submitted,

*Cheyanne K Kinghorn*

_____
Cheyanne K. Kinghorn (BPR # 28305)
KINGHORN LAW, PLLC
3200 West End Ave., Suite 500
Nashville, TN  37203
Office (615) 522 5015
Fax (615) 634 4849
ckk@kinghornlaw.net