IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAWN STACY, | ) |
| | ) |
| Plaintiff | ) |
| | ) Case No. 3:11-cv-01241 |
| | ) |
| v. | ) |
| | ) Magistrate Judge Bryant |
| | ) |
| MVT SERVICES, LLC and BRIAN | ) |
| STOTT, individually, | ) |
| | ) |
| Defendants | ) |

## MEMORANDUM

### I.

### OVERVIEW

On December 30, 2011, the original complaint was filed in the Middle District of Tennessee. Jurisdiction is proper under federal question jurisdiction. 28 U.S.C. § 1331. The case is before Magistrate Judge Bryant on consent of the parties. Docket Entry No. 16. An amended complaint, Docket Entry No. 19, was improperly filed on May 1, 2012, and will be contemporaneously stricken from the record.

Currently pending before this Court is the Defendants' motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, and by Order entered contemporaneously with this Memorandum, this motion to dismiss will be GRANTED in part and DENIED in part.

1

## II.

## FACTS

The following facts, presumed to be true for ruling on the motion to dismiss, are contained in the complaint.

For approximately five months beginning in December, 2010, Plaintiff Dawn Stacy was employed by MVT Services, LLC, a foreign transportation company that conducts business out of a Nashville, TN office. Docket Entry No. 1 at ¶ 2, 18, 38. During her employment she was a supervisor, responsible for managing a number of MVT's drivers. Id. at ¶ 18.

Defendant Brian Stott was another supervisor at MVT, for whom Stacy worked. Id. at ¶ 20. Throughout Stacy's employment, Stott engaged in a pattern and practice of sexual harassment against Stacy, consisting primarily of verbally threatening and abusive comments, insults, physical abuse, intimidation, sexual slurs, derogatory names, and unwelcome suggestive comments. Id. at ¶ 21. He commented on her sexuality, asked to watch her perform sexual acts with other women, and told her to use her femininity to manipulate drivers. Id. at ¶ 22-23. He made sexual inquiries into Stacy's private life, and used sexual language when reprimanding her. Id. at ¶ 22, 25. On one occasion, Stott angrily yelled at Stacy and slapped her hand as punishment for a work-related mistake. Id. at ¶ 73.

Stacy repeatedly objected to Stott's behavior, and made clear that it was not welcome. Id. at ¶ 27. The repeated abuse created a hostile and uncomfortable work environment, causing Stacy to suffer, among other things, stress, migraines, sleep loss, depression, anxiety, daily chest pains, irritability, marital problems, and twenty pounds of weight loss. Id.

2

In early January, 2011, Stacy complained of the harassment to the Human Resources department in MVT's Nashville office. Id. at ¶ 28. Her complaints were directed to another office, to which she complained at least three times. Id. at ¶ 28-29.

Stacy's complaints were not taken seriously. Id. at ¶ 35. During a meeting with company officials, no solution to the harassment was discussed. Id. at ¶ 34. The officials joked about her problem and suggested that she deal with the problem herself. Id. They told her that if she did not like the conditions, she could quit. Id. at ¶ 33. The lack of seriousness with which her complaints were taken caused Stacy to feel both embarrassed and exposed. Id. at ¶ 35.

Beginning in February, 2011, numerous changes were made to Stacy's responsibilities. Id. at ¶ 51-52. She was assigned six to seven additional weekend shifts per month without a corresponding increase in pay. Id. at ¶ 52. Many of these shifts were alone with Stott, who often arrived wearing nothing but his pajamas. Id. She was reassigned drivers known to be poor performers, causing her performance metrics to fall. Id. at ¶ 53. As a result, she was unable to earn performance-based bonuses. Id. A raise that she had been previously promised was denied. Id. at ¶ 54.

On April 26, 2011, Stacy left the Company because she was unable to tolerate the harassment. Id. at ¶ 38. Prior to instituting this action, Stacy timely filed a charge of sexual harassment with the Equal Employment Opportunity Commission pursuant to §706(e) of Title VII, 42 U.S.C. §2000(e-5)(e) and received a right to sue letter within 90 days of filing this lawsuit. Id. at ¶ 14.

## III.

## STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Legal conclusions and unwarranted factual allegations may be disregarded. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim." However, the Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must raise the claim above the speculative level, but need not plead detailed factual allegations. Id. "Threadbare recitals of the elements of a cause of action . . ." will not "unlock the doors of discovery for a plaintiff." Iqbal, 556 U.S. at 678-79.

## IV.

## SEXUAL HARASSMENT CLAIMS

### Stott's Individual Liability

Plaintiff has filed two claims under 42 U.S.C. § 2000e-2(a)(1) (part of what is popularly known as "Title VII"): sexual harassment and retaliation. Each of these claims is brought against both MVT and Stott, her employer and supervisor, respectively. Section 2000e-2(a) reads, in part, "[i]t shall be an unlawful employment practice for an employer -

4

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." (Underscore supplied).

In the Sixth Circuit an individual who is not otherwise an employer cannot be held personally liable under Title VII. <u>Wathen v. General Elec. Co.</u>, 115 F.3d 400, 405 (6th Cir. 1997). The law does not allow victims to claim against their supervisors and managers; they must claim against their employers. <u>See</u> <u>id.</u> The Second, Fifth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits have held similarly; the Fourth Circuit is the only circuit to hold otherwise.[1]

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." § 2000e(b). There is no suggestion in the complaint that Defendant Stott is an employer. He is described as a supervisor; there is no basis by which this Court may infer that he is an employer, nor is there reason to believe that discovery may produce evidence that he is. The claims against Stott are no more than attempts to hold him individually liable, which is not permitted in the Sixth Circuit. Accordingly, the Title VII sexual harassment and retaliation claims against Stott must be dismissed.

---

[1] <u>See</u> <u>Wathen</u>, 115 F.3d at 404-05, for an extensive discussion of the circuit courts, as well as the district courts within the Sixth Circuit, to decide the issue. The majority have held that a supervisor cannot be held individually liable under Title VII.

## MVT's Liability for Stott's Conduct

Employers are often liable for the conduct of their employees through the doctrine of *respondeat superior*. Title VII *respondeat superior* liability in sexual harassment cases depends on the harasser's position in the company relative to the victim's. First, if the harasser is the victim's supervisor, the employer is presumptively held liable. Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). In some circumstances the employer may have an affirmative defense available, id., but defenses need not be discussed at this stage. Second, if the harasser is the victim's co-worker, the victim must demonstrate that the employer 1) knew of the harassment, and 2) failed to take appropriate remedial action. Williams v. General Motors Corp., 187 F.3d 553, 561 (6th Cir. 1999).

Paragraph 20 of the complaint alleges that "Defendant Stott was Plaintiff's direct supervisor from the time of her hire through the time of her constructive discharge." Defendant MVT contends that Stott's status as Stacy's "supervisor is a legal conclusion that requires supporting facts," Docket Entry No. 9 at 17, but this argument is unconvincing. An employee's title or function is a relatively simple question of fact requiring no legal analysis. Basic investigation into employment records or personnel charts will be able to prove or disprove this claim. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). For the purposes of deciding this motion, the Court must accept as true the factual allegation that Defendant Stott was the Plaintiff's supervisor during the relevant period. As pled, MVT is prima facie liable for Stott's misconduct in the course of his employment. It is unnecessary to evaluate the arguments under the co-worker framework.

6

## Prima Facie Case of Sexual Harassment

The analysis next turns to whether Stacy has adequately pled the existence of a hostile work environment. "[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Faragher held that the threshold for meeting the objective element is high. Occasional jokes, teasing, and uncomfortable comments are not actionable. Id. at 788. Title VII is not intended to be a "general civility code" that prevents all tension in male-female interactions. Id. (quoting Oncale v. Sundowner Services, Inc., 523 U.S. 75, 80 (1998)). Normally, a single comment is not enough to create an actionable claim. Faragher at 788. Some amount of abusive and offensive language is part of everyday life. However, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted).

The defendant argues that Stott's conduct did not cross the Faragher threshold. He concedes that he made offensive comments, but claims that they were nothing more than jokes and teasing. Docket Entry No. 9 at 18-19. The Plaintiff turns to Harris to demonstrate otherwise. That case outlines several factors to be considered in evaluating the offensiveness of conduct, including

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the

> employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Id. at 22. Stacy alleged that Stott screamed at her, requested to watch her perform sexual acts, questioned her sexuality, and repeatedly commented about the attractiveness of her breasts. Docket Entry No. 1 at ¶ 22-24, 30. These comments were unwelcome, and she repeatedly asked Stott to quit making them. Id. at ¶ 27. Stott is alleged to have pounded on Plaintiff's desk and shouted vulgar comments at her, all in the presence of other employees. Id. at ¶ 25. "Screaming at an employee to stop 'sucking [another employee's] dick' can hardly be considered teasing." Docket Entry No. 11 at 20 (citing Docket Entry No. 9 at 19).

The Court agrees with the Plaintiff. Stott's behavior, as pled, appears to have exceeded routine jokes and teasing, and is alleged to have caused the Plaintiff to suffer migraines, marital problems, and weight loss. See Docket Entry No. 1 at ¶ 27. The allegations push the claim over ". . . the line between possibility and plausibility . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). Since sufficient facts have been pled to establish a plausible claim of sexual harassment, the Defendant's motion with respect to that claim will be denied.

### Prima Facie Case of Retaliation

A claim of retaliation under Title VII has four elements: (1) the plaintiff engaged in an activity protected by Title VII, (2) this exercise of protected rights was known to the defendant, (3) the defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. Lindsay v. Pizza Hut of America, 57 Fed. Appx. 648, 649

(6th Cir. Jan. 29, 2003) (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)). The adequacy of the pleadings regarding the first and second elements of the claim are uncontested by the defendant. The third and fourth elements are in dispute.

*Adverse Employment Action*. Adverse employment action requires something more than common workplace changes. See Bowman v. Shawnee State Univ., 220 F.3d 456, 461 (6th Cir. 2000). Ordinary scheduling changes, reorganization of duties, and small disruptions in routine do not qualify as adverse employment action. Id. at 461-62. The Supreme Court recently held that an adverse employment action is any action that might dissuade "a reasonable worker from making or supporting a charge of discrimination." Burlington Northern and Santa Fe Rwy. Co. v. White, 548 U.S. 53, 68 (2006).

Defendant claims that none of the changes experienced by Stacy constituted adverse employment action. MVT states that "Plaintiff's personal belief . . . is immaterial," and "[a]ll of the workplace changes cited in her Complaint are commonplace personnel adjustments that companies make every day . . . ." Docket Entry No. 9 at 12-13. If each of Defendant's actions were considered alone, this might be correct. However, as Plaintiff points out, it is not "whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether – taken together – the reported incidents make out such a case." Williams v. General Motors Corp., 187 F.3d 553, 562 (6th Cir. 1999).

Here, the totality of the circumstances suggests that adverse employment action was taken against Stacy. She was subjected to a large number of changes over a short period of time, enacted by the supervisors to and about whom she complained. Docket Entry No. 1 at ¶ 55. She has alleged that, following her report of Stott's harassment, she was required to work a significant number of additional weekend shifts without an increase in pay; that

9

poor-performing drivers were reassigned to her; that she was denied a previously-promised pay increase; and that she was required to spend significant time alone with the man she complained was harassing her. Id. at ¶ 52-54. Taken together, these actions might dissuade a reasonable employee from continuing to press a claim of discrimination. Accordingly, the Court finds the element of adverse employment action to be adequately pled.

*Causal Connection*. The plaintiff must be able to demonstrate that the adverse employment action was a result of her sexual harassment complaint. As discussed in the defendant's reply, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Docket Entry No. 14 at 3 (citing Arendale v. City of Memphis, 519 F.3d 587, 606 (6th Cir. 2008); Michael v. Caterpillar Fin. Services Corp., 496 F.3d 584, 596 (6th Cir. 2007); Tuttle v. Metro Gov't of Nashville, 474 F.3d 307, 321 (6th Cir. 2007); Little v. BP Exploration & Oil Co., 265 F.3d 357, 363-64 (6th Cir. 2001); Johnson v. Univ. of Cincinnati, 215 F.3d 561, 582-83 (6th Cir. 2000)). Defendant maintains that Plaintiff has offered no evidence, other than temporal proximity, that the adverse employment action was caused by her complaining of the sexual harassment. Docket Entry No. 14 at 4.

However, Plaintiff has pled facts that suggest a causal connection. She has alleged that MVT officers did not take her complaints seriously and joked about her problems. Docket Entry No. 1 at ¶ 34-35. Their proposed solutions to her problems were to 1) quit, or 2) deal with them herself. Id. at ¶ 33-34. They assigned her to additional shifts alone with her harasser. Id. at ¶ 52. These incidents all occurred over a very short period of time – after all, Stacy only worked at MVT for five months. These facts may not be sufficient to support the

10

necessary causal connection at the summary judgment stage, but they do suggest that further evidence of causation could be produced during discovery.

Temporal proximity ". . . provides highly probative evidence of a causal connection," even if it is alone insufficient to support an inference of retaliatory motive. <u>Arendale v. City of Memphis</u>, 519 F.3d 587, 606 (6th Cir. 2008). Coupled with the additional facts pled by the plaintiff, this Court finds the timing of the adverse employment action taken against Stacy adequate to withstand defendant's motion to dismiss for failure to sufficiently plead a causal connection. Defendant's motion with respect to the retaliation claim will be denied.

<u>THRA Claims</u>

The Tennessee legislature "intended the THRA to be coextensive with federal law." <u>Carr v. United Parcel Service</u>, 955 S.W.2d 832, 834 (Tenn. 1997) (overruled on other grounds, <u>Parker v. Warren Co. Util. Dist.</u>, 2 S.W.3d 170 (Tenn. 1999)). The Tennessee Supreme Court looks to federal interpretation of Title VII for guidance in interpreting the THRA. <u>Carr</u>, 955 S.W.2d at 835. It has reached the same two conclusions about the THRA that this Court reached *supra* about Title VII liability. First, individual liability does not exist under the THRA. <u>Id.</u> Second, employers are vicariously liable for the conduct of supervisors with authority over a victimized employee. <u>Parker v. Warren County Utility Dist.</u>, 2 S.W.3d at 176. As under Title VII, an affirmative defense may be available to the employer – but that need not be considered at this stage. <u>Id.</u>

The holdings of the Tennessee Supreme Court require this Court to handle the THRA sexual harassment claims in the same fashion as it handles the Title VII claims. The THRA claims for sexual harassment and retaliation against Defendant Stott are hereby dismissed.

11

As conceded by defendant MVT, "[a] prima facie case of sexual harassment under the THRA is the same as under Title VII." Docket Entry No. 9 at 19. Therefore, the Plaintiff has stated a claim under the THRA for sexual harassment against defendant MVT.

### Whistleblower Statute Claim

The Tennessee Public Protection Act, T.C.A. § 50-1-304, commonly known as the "Whistleblower" statute, provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or refusing to remain silent about, illegal activities." § 50-1-304(b). Two years ago, in Smith v. C.R. Bard, Inc., this Court outlined the elements of a claim under the TPPA. 730 F. Supp. 2d 783, 796 (M.D. Tenn. 2010). To establish a claim,

> "a plaintiff must prove that (1) he was an employee; (2) he refused to participate in, or remain silent about, illegal activities; (3) he was terminated by his employer; and (4) there is an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and his termination."

Id. The fourth element, the exclusive causal connection, receives the most attention, and is the element challenged by the Defendant.

MVT claims that Stacy's alleged discharge was not solely a result of her whistleblowing. It claims that "she quit because the environment was hostile, not [because] she was fired in retaliation for making a complaint." Docket Entry No. 9 at 15. This argument, however, misses the point of the Plaintiff's pleadings. Stacy claims that, after complaining to supervisors about Stott's harassment, MVT created such a hostile work environment that no reasonable person could have stayed. Docket Entry No. 1 at ¶ 38. There is not a wealth of Tennessee case law on constructive discharge, but it is clear that such resignations are not considered voluntary. See Philips v. Interstate Hotels Corp. # L07, 974 S.W.2d 680, 687 (Tenn. 1998); Campbell v. Florida Steel Corp., 919 S.W.2d 26, 34-36 (Tenn.

12

1996). The hostile work environment is not a "different explanation for why she quit," as MVT claims. Docket Entry No. 9 at 15. The hostile work environment, as alleged, was a direct consequence of Stacy's complaints. The Plaintiff has adequately pled an exclusive causal connection between her complaints of sexual harassment and her termination. The claim will not be dismissed for failure to plead a causal connection.

Alternatively, the Defendant argues that this claim is preempted by the THRA's exclusivity provision, T.C.A. § 4-21-101, *et seq*. Docket Entry No. 9 at 16. However, Tennessee cases hold that the THRA preempts *common law* claims for retaliatory discharge. See Underland-Williams v. GutterGuard, LLC, 2011 WL 6148672 at *4-5 (M.D. Tenn. Dec. 9, 2011). This court can find no evidence that it preempts other statutory claims. The Plaintiff has not brought the claim under the common law; it has brought it under the TPPA. Docket Entry No. 11 at 14. The Plaintiff's retaliatory discharge claim under the TPPA will not be dismissed.

## V.

## TORT CLAIMS

### Intentional Infliction of Emotional Distress

The Plaintiff has alleged claims of intentional infliction of emotional distress against both MVT and Stott. There are three elements to an IIED claim under Tennessee law: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). Tennessee law does not offer a clear answer as to what conduct is severe enough to meet the second element. A survey of what has been offered, however, will prove useful.

13

Medlin v. Allied Inv. Co. held that, to be outrageous, conduct must "go beyond all bounds of decency, [be] regarded as atrocious, and utterly intolerable in a civilized community." 217 Tenn. 469, 478-79 (1966) (abrogated on other grounds by Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996)). As this Court held in 2005, "[t]his is an extremely high standard for the plaintiff to meet." Jenkins v. Nashville Public Radio, 2005 WL 3358871 at *4 (M.D. Tenn. Dec. 9, 2005). It is clear that not every sexual harassment claim will automatically give rise to an IIED claim, even though, to some extent, all instances of sexual harassment can be considered outrageous. See Arnett v. Dominos Pizza, I, LLC, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003).

Outrageous conduct claims are not evaluated in a vacuum; they are evaluated in light of the category of conduct alleged. Sexual harassment will only support an outrageous conduct claim when the harassment alleged is especially heinous compared to other sexual harassment claims. See Barrett v. Whirlpool Corp., 704 F.Supp. 2d 746, 757 (M.D. Tenn. 2010); Briordy v. Chloe Foods Corp., 2008 WL 587503 at *10 (M.D. Tenn. Feb. 29, 2008). In Briordy, the defendant made explicit remarks and inappropriate contact with the plaintiff on a business trip. 2008 WL 587503 at *2. He invited her to go to an adult toy store, and tried to kiss her several times. Id. Later, he attempted to invite himself into her hotel room. Id. at *3. The court held, however, that "[t]he facts are, unfortunately, not atypical of the fact pattern presented in most harassment cases," and did not impose IIED liability. Id. at *10.

"The courts have the responsibility to determine, in the first instance, whether the defendant's conduct is so extreme and outrageous as to permit recovery." Alexander v. Inman, 825 S.W.2d 102, 105 (Tenn. Ct. App. 1991). This Court finds that the present facts "are not atypical of behavior giving rise to employment discrimination cases." Barrett, 704

F.Supp. 2d at 757. They are not, when compared to other harassment claims, sufficiently heinous to maintain an IIED claim. The facts in both Briordy and Barrett were at least as egregious as those alleged here, yet neither of those cases resulted in IIED liability. Accordingly, the Plaintiff's claims against MVT and Stott for intentional infliction of emotional distress will be dismissed.

## Assault and Battery

Under Tennessee law, an assault is "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." Thompson v. Williamson County, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997). A battery is "any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." Raines v. Shoney's, Inc., 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995).

Corporal punishment in the workplace is not commonly accepted in our society. Slapping an employee for a simple error "infringes on a reasonable sense of personal dignity ordinarily respected in a civilized society." Doe v. Mama Taori's Premium Pizza, 2001 WL 327906 at *4 (Tenn. Ct. App. April 5, 2001). Pounding on Stacy's desk and screaming at her in the presence of other employees could "creat[e] a reasonable apprehension of imminent physical harm on the part of the plaintiff." Hughes v. Metropolitan Government of Nashville and Davidson County, 340 S.W.3d 352, 369 (Tenn. 2011) (quoting Johnson v. Cantrell, 1999 WL 5083 at *3 (Tenn. Ct. App. Jan. 7, 1999). The other incidents between Defendant Stott and the Plaintiff, which are incorporated into the assault and battery claim, Docket Entry No. 1 at ¶ 72, support a reasonable inference that Stott's reprimand was hostile, unwelcome, and offensive. Defendant cites a case in which an instructor grabbed a student by the arm to

15

Case 3:11-cv-01241   Document 25   Filed 06/18/12   Page 15 of 18 PageID #: 249

escort her from a classroom to support the proposition that "not every physical contact that is unconsented to is so offensive that it amounts to a battery." Runions v. Tennessee State Univ., 2009 WL 1939816 at *2,4. The Court does not find this comparison convincing. Corporal punishment at work is not the same as escorting someone from a room. Plaintiff has adequately pled facts supporting an assault and battery claim against Defendant Stott.

Defendant argues in the alternative that this Court should consider "judicial economy, convenience, fairness, and comity," and require the assault and battery claim to be litigated in state court. Docket Entry No. 9 at 10 (quoting City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173 (1997)). This is a relatively small state claim, as defendant observes, and is the only remaining claim against Defendant Stott. However, it arises from the same "common nucleus of operative fact" as the claims against MVT. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). Discovery of the claims will overlap substantially. Hearing this claim will not significantly burden this Court. It would be a much greater burden on both the parties and the state court system to require an entirely separate proceeding for this claim. Accordingly, the Court will exercise supplemental jurisdiction over the assault and battery claims against Defendant Stott. The Defendant's motion regarding those claims will be denied.

## VI.

## UNADDRESSED CLAIMS

The complaint presented several claims that are unaddressed in the Plaintiff's brief in opposition to the motion to dismiss (Docket Entry No. 11). The defendant's motions to dismiss the assault and battery claim against defendant MVT, the negligent infliction of emotional distress claim, and the negligent supervision and retention claim are unopposed by

16

Case 3:11-cv-01241   Document 25   Filed 06/18/12   Page 16 of 18 PageID #: 250

the Plaintiff. The Court interprets the failure to address those claims as the Plaintiff's intention to abandon them. Further, these claims are absent from the Plaintiff's improperly-filed amended complaint.[2] Although that complaint will be stricken from the record, it is indicative of the Plaintiff's intent. Accordingly, those claims will be dismissed.

## VII.

## CONCLUSION

For the reasons given above, the defendants' motion to dismiss is GRANTED in part and DENIED in part, as follows:

(1) Motion to dismiss Plaintiff's claim of sexual harassment under Title VII is GRANTED as to Defendant Stott and DENIED as to Defendant MVT.

(2) Motion to dismiss Plaintiff's claim of retaliation under Title VII is GRANTED as to Defendant Stott and DENIED as to Defendant MVT.

(3) Motion to dismiss Plaintiff's supplemental state claim of sexual harassment in violation of the THRA is GRANTED as to Defendant Stott and DENIED as to Defendant MVT.

(4) Motion to dismiss Plaintiff's supplemental state claim of retaliatory discharge under the TPPA is DENIED.

(5) Motion to dismiss Plaintiff's claim of assault and battery is GRANTED as to Defendant MVT and DENIED as to defendant Stott.

---

[2] On May 1, 2012, the Plaintiff filed an Amended Complaint (Docket Entry No. 19) without having been granted leave to amend and without the consent of the Defendants. As observed in Defendants' Motion to Ascertain the Status of Defendants' Motion to Dismiss (Docket Entry No. 21, F.N. 1), the filing was not proper under Federal Rule of Civil Procedure 15(a).

17

(6) Motion to dismiss Plaintiff's claim of intentional infliction of emotional distress is GRANTED.

(7) Motion to dismiss Plaintiff's claim of negligent infliction of emotional distress is GRANTED.

(8) Motion to dismiss Plaintiff's claim of negligent supervision and retention is GRANTED.

An appropriate Order will enter.

**ENTERED** this 18th day of June, 2012.

/s John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE